IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EMANUELA JOE JOSEPH,<br><br>Defendant. | CRIMINAL ACTION NO:<br><br>1:20-CR-114-WMR-CCB-20 |

### ORDER

This matter is before the Court on the Magistrate Judge's Final Report and Recommendation ("R & R") [Doc. 621], which recommends that Defendant's Motion to Dismiss Count One of the Indictment [Doc. 429] and Defendant's Motion to Suppress Statements [Doc. 396] both be DENIED.

I.   BACKGROUND

A grand jury indicted Emanuela Joe Joseph ("Defendant") on one count of money laundering conspiracy in violation of 18 U.S.C 1956(h) in Count One of the Indictment. [*See* Doc. 13]. Subsequently, Defendant filed both a Motion to Dismiss Count One [Doc. 429] and a Motion to Suppress Statements relating to incriminating disclosures he made to FBI Special Agents. [Doc. 396]. After considering the parties' respective briefs, as well as the arguments and witness testimony presented

1

at a hearing on the motions, the Magistrate Judge issued an R & R recommending that both motions be denied. Defendant timely filed objections to the R & R. [*See* Doc. 634].

## II.   LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1), the Court reviews the R & R for clear error if no objections are filed by a party within 14 days after being served with a copy. If a party files objections, however, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.  As Defendant has filed objections to the R & R, the Court shall determine *de novo* the specific portions of the R & R that is the subject of a proper objection.

## III.   DISCUSSION

### A. Defendant's Motion to Dismiss Count One of the Indictment

In her Motion to Dismiss, Defendant contends Count One of the Indictment did not "notify Ms. Joseph of the charges to be defended against" or "enable her to rely upon a judgment as a bar against double jeopardy." [Doc. 429 at p. 5]. Defendant also contends that the facts in the Indictment do not sufficiently establish that Defendant possessed the requisite mental state of knowingly and willfully entering into a conspiracy. [*Id.*]  The Government responds in turn, arguing an

indictment need only "plead the elements of the offense and inform the Defendants of the charges; it is not required to espouse all of the evidence it will present at trial in support of these elements." [Doc. 489 at p. 9]. The Government also points out that the Indictment went beyond these requirements by including detailed descriptions of both the manner and means of the conspiracy and the two overt acts performed by the Defendant. [*Id*. at pp. 6-7]. Thus, the Government contends the indictment adequately provides Defendant with notice of the charges against her and enables her to plead double jeopardy in any future prosecution for the same offense. [*Id*. at p. 5].

The Magistrate Judge agreed with the Government's position and has recommended denying Defendant's Motion to Dismiss Count One. In her objections to the R & R, Defendant argues that the Indictment fails to identify that she had any knowledge of the conspiracy to commit money laundering or any knowledge that the transactions had a criminal purpose. She further argues that the Indictment fails to contain sufficient factual details to notify her of the charge against her. [Doc. 634 at p. 3].

The Magistrate's R & R appropriately recognized the requirements for indictments, which must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The

purpose of an indictment is not to enumerate the evidence that the Government plans to utilize to meet the burden of persuasion. Rather, an indictment primarily serves to provide notice of a charged offense. *See United States v. Chalker*, 966 F.3d 1177, 1190 (11th Cir. 2020) ("An indictment is sufficient if it (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense"); *States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) ("[A] court may not dismiss an indictment on a determination of facts that should have been developed at trial"). As the Magistrate Judge noted in the R & R, "[t]he indictment identifies the specified unlawful activities of bank and wire fraud, the known co-conspirators by name, a range of dates during which the conspiracy took place, where the conspiracy occurred, and the manner and means the conspirators used to accomplish their objectives[,]" in addition to detailing alleged overt acts by the Defendant. [Doc. 621 at p. 9; *see also* Doc. 13 at pp. 13-19]. As the Indictment contains these details, it rather easily meets the requirement of containing "a statement of the facts and circumstances as will inform the accused of the specific offense ... with which he is charged." *See United States v. Durrett* 524 F. App'x 492, 494 (11th Cir. 2013) (citing *United States v. Bobo,* 344 F.3d 1076, 1083 (11th Cir.

4

2003). These same factual details are sufficient to protect against double jeopardy. *See United States v. Yonn*, 702 F.2d 1341, 1348 (11th Cir.1983) (drug conspiracy indictment that recited the essential elements of the offense and provided the names of co-conspirators, the type of controlled substance, and the time frame and location of the conspiracy was sufficient to provide protection against double jeopardy).

The Defendant also argues that the Indictment fails to identify that she had knowledge of the conspiracy or knowledge that the transactions had a criminal purpose and, thus, that the Indictment fails to account for the knowledge element of the offense. The Court finds her argument to be without merit. Under § 1956(h), "only two elements of conspiracy need be proven: (1) an agreement between two or more persons to commit a money-laundering offense; and (2) *knowing and voluntary participation in that agreement* by the defendant." *United States v. Moran*, 778 F.3d 942, 962 (11th Cir. 2015) (quoting *United States v. Broughton*, 689 F.3d 1260, 1280 (11th Cir. 2012)). Here, the Magistrate's R & R specifically notes that the Indictment "alleges that Defendants knowingly engaged in a conspiracy to launder money." [Doc. 621 at p. 12]. Upon review, the Court finds that the Indictment does, in fact, allege the Defendant possessed the requisite knowledge because it states that the Defendant and others "did knowingly combine, conspire, agree . . . to commit an offense against the United States;" that the Defendant did "knowingly conduct

5

and attempt to conduct, and cause to be conducted, financial transactions … which involved the proceeds of a specified unlawful activity, that is, wire fraud … and bank fraud;" that the Defendant "[knew] that said transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that … [Defendant] knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity[.]" [Doc. 13 at pp. 3–4]. Lastly, the "Manner and Means" and "Overt Acts" sections under Count One of the Indictment details the methods by which the Defendant and the other conspirators conducted their alleged criminal scheme. [*Id*. at pp.8-20]. The Court finds that the Indictment sufficiently alleges the knowledge element for the offense of conspiracy to commit money laundering.

For the above reasons, the Court finds that Defendant's objections to the R&R as it pertains to the Motion to Dismiss Count One of the Indictment are without merit.

### B. Defendant's Motion to Suppress Statements

In her motion, Defendant seeks to suppress the statements she made to law enforcement agents while in a government vehicle after her arrest. One of the law

enforcement agents, Agent Joshua Riser, testified that he had advised Defendant of her constitutional rights and that she signed a waiver of those rights before the questioning commenced. [Doc. 621 at pp. 14-15; *see also* Doc. 516 at pp. 10-12]. Following the waiver, Agent Riser asked Defendant about a Navy Federal bank account that she controlled, and Defendant declined to provide any additional details about the account. [Doc.621 at p. 15; *see also* Doc. 516 at pp. 16–17]. Defendant continued to answer other questions on different matters, however. Midway through the interview, Defendant mentioned that she might need an attorney. As Agent Riser testified before the Magistrate, "Ms. Joseph stated, I don't know if I should have a lawyer, I believe was the approximate – approximately what she said. I followed up, and she said, I don't want to say anything to incriminate myself without knowing." [Doc. 516 at p. 17]. Agent Riser then asked Defendant if she wanted to stop the interview, and Defendant stated that she wanted to hear the rest of the questions. To verify that Defendant understood the situation, Agent Riser asked Defendant if she was willing to continue the interview without a lawyer present, and Defendant responded in that she did. [*Id.*] The interview then continued for roughly thirty minutes without any further mention of a lawyer. There are no facts from the hearing to suggest that the agents threatened Defendant during the interview or that

Defendant was in any way incapacitated or did not understand what the agents told her. [*Id*. at pp. 9, 11, 15, 16, 18, 33].

In her Motion to Suppress Statements [Doc. 396], Defendant argued that she "did not knowingly or voluntarily waive her rights to remain silent and to have her counsel present during questioning" and requested a hearing regarding the voluntariness of her custodial statements. [*Id*. at p. 2]. Following the hearing on the motion, Defendant filed a post-hearing brief which refined her arguments. Rather than arguing the issue of whether Defendant voluntarily or knowingly waived constitutional rights guaranteed by *Miranda v. Arizona*, Defendant argued in her post-hearing brief that she had invoked her right to remain silent and right to counsel during the interview and, therefore, the interrogation by law enforcement agents should have ceased. [*See* Doc. 522].[1]

The Government's response to Defendant's post-hearing brief highlighted the ambiguity in Defendant's "invocation" of her right to counsel, arguing that Defendant's decision to continue with the interview despite having mentioned earlier that she "may" need a lawyer meant that she never invoked her right to counsel.

---

[1] Because Defendant has not objected to the Magistrate Judge's findings and conclusions regarding the voluntariness of Defendant's custodial statements, the Court need only review the Magistrate's recommendation on the validity of the waiver under a clear error standard. Here, the Magistrate did not clearly err on this issue. [*See* Doc. 621 at pp. 18-21]. Accordingly, this Court adopts this portion of the R & R as the Order of the Court, and the remainder of this Order shall address *de novo* the issues raised in Defendant's objections to the R & R.

8

[Doc. 529 at p. 13]. The Government also argues that Defendant did not unequivocally invoke the right to remain silent when she declined to answer questions about a specific bank account because she subsequently indicated that she was willing to continue with the interview.

Upon de novo review of the facts, the Court concludes that Defendant's initial refusal to answer certain questions about the Navy Federal bank account and her subsequent statements regarding her uncertainty about whether she should request a lawyer were too equivocal and ambiguous to constitute a clear invocation of her right to remain silent and right to counsel during the interview. This is particular so where, as here, Defendant expressed a willingness to "hear the next question" without requesting that a lawyer be present.

The Court acknowledges the well-settled principal of law that there can be no custodial questioning of a defendant if the defendant "indicates in any manner and at any stage of the process that [she] wishes to consult with an attorney before speaking[.]" *Miranda v. Arizona*, 384 U.S. 436, 444-445 (1966).  The Court further acknowledges that, if the defendant consents to custodial interrogation but later requests the presence of counsel, "interrogation must cease until an attorney is present." *Id.* at 474.  However, the question in this case is whether Defendant actually invoked her constitutional rights.

"[I]f a suspect makes a reference to an attorney [during questioning] that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis v. United States*, 512 U.S. 452, 459 (1994) (emphasis in original) (holding that defendant's statement – "Maybe I should talk to a lawyer" – was not a request for counsel and, thus, further questioning did not violate defendant's rights); *see also United States v. Edwards*, 834 Fed. App'x 559, 560 (11th Cir. 2020) (per curiam) (holding that the defendant's statement, "I have an attorney that, you know, uh, I — I should probably be talking to," did not equate to an invocation of the right to counsel).

Here, Defendant's reference to her uncertainty about whether to request a lawyer, like the defendants' remarks in *Davis* and *Edwards*, conveyed only that Defendant *might* invoke the right to counsel at some point and, thus, did not require the cessation of questioning. Furthermore, following Defendant's reference to a lawyer, Agent Riser asked a clarifying question to ensure that Defendant was not invoking her right to have an attorney present before proceeding with the interview. [Doc. 621 at p. 23].

Defendant attempts to distinguish the current case from *Davis* by pointing out that she, unlike the defendant in *Davis*, had refused to answer certain questions about

her bank account prior to raising the question about the possible need for counsel. [Doc. 634 at p. 4–5]. Defendant fails to elaborate on the legal significance of this distinction. The Court finds that Defendant's refusal to answer a certain question has little bearing on the issue of whether her subsequent reference to a lawyer can reasonably be construed to be an unequivocal request to have counsel present during questioning. *See id.* at 452. Based on the facts of this case, the Court finds that Defendant did not clearly invoke her right to counsel.

Prior precedent makes quick work of Defendant's arguments regarding the invocation of right to remain silent as well. Defendant contends that she unequivocally invoked her right to remain silent during the interview when she declined to answer one question posed by Agent Riser regarding a Navy Federal bank account in her name. [Doc. 661 (Gov. Exh. 1 at 10:50–11:18)]. However, following Defendant's refusal, Agent Perry posed an entirely different question to Defendant, which she answered without hesitation, and the interview continued. [*Id.* at 11:22–11:30]. The Eleventh Circuit has held that "a suspect's refusal to answer certain questions is not tantamount to the invocation, either equivocal or unequivocal, of the constitutional right to remain silent and that questioning may continue until the suspect articulates in some manner that he wishes the questioning to cease." *United States v. Mikell*, 102 F.3d 470, 477 (11th Cir. 1996); *see also*

11

*United States v. Thomas*, 176 F. App'x 997, 997 (11th Cir. 2006) ("The refusal to answer a specific question is not tantamount to an invocation of rights as to other questions"). Applying this authority to the facts of this case, the Court concludes that Defendant's refusal to answer a certain question during the interview did not constitute an unambiguous or unequivocal assertion of her right to remain silent for the remainder of the interview.

## IV. CONCLUSION

After considering the Final Report and Recommendation [Doc. 621] and Defendant's Objections thereto, the Court receives the R & R with approval and adopts its findings and legal conclusions as the Opinion of this Court. Accordingly, both the Defendant's Motion to Dismiss Count One [Doc. 429] and Motion to Suppress Statements [Doc. 396] are **DENIED.**

**IT IS SO ORDERED**, this 18th day of July, 2022.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE